Thank you, Your Honor. May it please the Court, my name is Jim Bopp. I was attorney for the plaintiffs below. I request 10 minutes for rebuttal. Your Honor, you're on time. Thank you. This appeal involves a First Amendment challenge to two statutory provisions regulating the initiative process in Chula Vista. One is a natural person requirement requiring a proponent of an initiative to be an elector and therefore a natural person, not a corporation or association, which the Court below upheld. Second is the reveal-yourself requirement where proponents of an initiative are identified on the circulated version of the initiative petition. The three-judge panel struck down this requirement. The reveal-yourself requirement is contained in 9207, which requires a proponent of an initiative to be identified in the circulated version of the initiative petition. This is an at-the-point-of-contact-with-the-voter requirement, which is unconstitutional under McIntyre, Meyer, ACLF, and Nguyen and Heller of this Court. Mr. Bopp, you're not challenging the first two steps in the initiative process where the proponent identifies himself or herself, are you? No. That's in the version filed with the clerk and the second version, which is often published in newspapers. So given the fact that the identification has already occurred publicly, how can you claim that there's still a First Amendment right to anonymity by the proponent as opposed to the circulator of the petition? Well, the best example is McIntyre, a U.S. Supreme Court case, where Mrs. McIntyre had identified herself as an opponent of the school bond initiative in other publications that she had done. However, when she was penalized for failing to disclose her identity on a handbill, she challenged that, and it was the right of anonymity at the point of contact with the voter. So it's a place-in-context right as opposed to a general claim of a First Amendment right to anonymity? Well, you don't give up your right to anonymity in a particular circumstance because it's disclosed in another, is what the Court held. And the Court distinguished the context, the at-the-point-of-contact-with-the-voter as the critical contextual situation where the Court said that the interest in anonymity is at its greatest, its highest. Well, it's my understanding that the proponents actually went on public television and appeared at city council meetings in order to advocate this. But suppose if they stepped outside after their public speech at the city council and sought some kind of support, would they still be entitled to? Of course. You can look to ACLF for the same proposition. The circulators there were identified by reports, campaign finance reports. So you don't see any distinction between circulators and proponents for identification purposes? No, because each of them are involved in an expressive activity. They are arguing for people to sign the initiative. The proponent does that in the petition itself in Chula Vista. There's a 300-word statement that the proponent prepares that is placed in the initiative petition itself. And, of course, the circulator would be there to – Will the proponent actually be identified at the bottom or the introduction to their statement? No. That's a different context. It's not – the point of contact with the voter is when the discussion takes place. So I guess what's the burden on the proponent's First Amendment right here that outweighs the state's interest in ensuring the integrity of elections? Well, the courts have identified a whole series of reasons and justifications for anonymity in this context. But don't talk to us about general reasons. Get to this particular issue because this is Judge Tallman's question and really mine. I'm happy that he asked it because, as I understand, the identities of the official proponents are disclosed, mainly because each initiative petition must bear a copy of the notice of intention and title and summary of the petition. So we've already got two there. It's already been disclosed twice. Now they're just merely putting the copy of what was given to the county on the petition. So what's the interest? I think that's Judge Tallman's question. What's the big interest that we should bear? At the point of contact with the voter, the interest in anonymity is at its highest. And the particular proponents here have stated in the record that they – one of them will never do this again, if they would be disclosed in the circulated version. The other is not sure if she would. So is the injury simply chilling? Because your argument also included fear of harassment, and I'm trying to figure out what the nexus is between the violation that you're alleging and the general disclosure that already occurs in at least four or five different contexts, trying to figure out, well, how could they be harassed by this particular First Amendment violation when they've identified themselves in five other places? Harassment is only one of five different interests in anonymity. Is there any evidence of harassment here, I guess, is what I'm really asking? No. And if so, can you tie it? No, but there's five. Harassment's one. There's five. The very first one is that it removes the danger of preconceived prejudice concerning the messenger that would alter the reader's perceptiveness to the message. As McIntyre stated, prejudicing the message because they do not like the messenger. So that's the first thing, is that their message is disclosed. It's not simply a message here, is it? It's a request by the proponent to exercise certain authority. If it qualifies, the proponent could decide not to even file the petition. It's up to the proponent to file it. It's up to the proponent to defend it. The proponent is asking the signer of the petition to give him certain powers, and you want it to be anonymous as to whom you're giving your powers to pursue this petition or not pursue it, to defend it or not defend it? This information is available if somebody wants to. It's relevant to them. It's available at the clerk's office. It's available in the newspaper. So this information is available if it's relevant to the person. But the State's interest is not only in identifying the proponent, although it does have an interest in that, but you're asking the people who signed the petition to give quasi-legislative authority to certain people who are the proponents. And you want to conceal from them when they sign the petition that that's what they're doing? No. The proponents want to exercise their First Amendment rights not to be compelled to provide information in a political speech, presentation, which is their argument for signing the petition. They don't want the government requiring them to provide information. Aren't they really asking for a vote to make them a legislator, a type of legislator in California? And when you are essentially running for office, which this is analogous to, you can't do that anonymously. So why is it okay to be anonymous when you're asking essentially to become in charge of legislation? You know, the Supreme Court has not looked at, nor has this court looked at it in the way you just described. There's two lines of cases in this area. There are candidate elections and campaigns, and then there are ballot measures. But under California law, they merge in this context. No, they don't. Under state law, the proponent has certain quasi-legislative functions to, for example, to put forward the arguments and to defend in court and a number of other things. So why aren't those other cases equally relevant? Because the Supreme Court just recently held in Dovey Reed that because you give a certain legal effect to an expressive act, it doesn't change the fact it's an expressive act. And the expressive act is the numerous ways in which the proponent is advocating to the electors that they sign a petition, which is the, would place it on the ballot. The court said that the signing. Not without the action of the proponent. The proponent could decide not to place it on the ballot. It's true. He has certain legal authority, but it doesn't change the fact that it is an expressive activity when he is asking that the petition be signed. That is an expressive activity. That is being, that's where the First Amendment rights are. But, of course, lots of expressive activities may be limited. I mean, merely calling an expressive activity only begins the inquiry. Well, of course. But then you have the question of whether it passed exacting scrutiny. And we don't believe it passes exacting scrutiny either. There's no interest that is sufficient to sustain the requirement. Mr. Bob? Oh, sorry. Sorry. Mr. Bob, over here. Okay. Other states have initiative process. Are you aware of any other states where, in the initiative process, the proponent has been allowed to remain anonymous? No, but I haven't researched the issue. Okay. I don't know. No, we often have competing ballot measures in California on the same subject. They differ slightly, although they're complicated. Don't you think the people have a right, when they decide which petition to sign, to determine who's going to be in charge of that petition? Sure. Who's going to decide? That's available to them. All they have to do is refuse to sign the petition and go find that information if it's relevant to them. Well, if the state feels that people are entitled to that information, does that mean that everyone who's confronted with a petition should have to go to the city clerk's office before deciding? Yes. Because it's not the state's role to determine what First Amendment speech should be said, what should be said in First Amendment protected speech. That's called compelled speech by the government. Could a candidate for office say unidentified, please elect me? That's the Buckley line of cases, completely different. What's different? Aren't these people candidates? Sorry. Aren't these people candidates for the quasi-legislative position of determining whether the petition will be filed, what the arguments will be? Don't they exercise a quasi-legislative authority? You know, that's an interesting question, but I don't think it matters. I've gone back and forth on that in my own mind, whether that is true or not. But the bottom line is it's completely irrelevant. This is an expressive activity. The court has said repeatedly, including most recently in a case I'm very familiar with, Doe v. Reed, that it does not matter that you are giving some sort of official, something that somebody does in an expressive activity has some legal consequence. It doesn't matter. It doesn't change the fact that it is an expressive activity in and of itself. So in the Doe v. Reed case, when the people signed the petition, that was expressive activity, and it certainly has big-time legal effect. If enough of them sign it, the matter goes on the ballot. That's much more power than the proponent has. The proponent himself can't put something on the ballot. Only the electors can by signing the petition. And they said to still express it. But just a minute. Even if the electors sign the petition, the proponent has got to file it after that. The proponent has got to go forward. The proponent can quit even getting the signatures he desires. Isn't that true? The proponent has some official responsibility. And, therefore, the only reason that these signatures are even on this petition is because somebody puts a copy of, frankly, things you do not object to, a copy of the notice of intention and the title and the summary of the petition with the initiative petition. In other words, your people have put already their signatures on this, and the only reason their signatures are on the petition itself is because the title says there must be a copy of their notice of intention, title, and summary. So, therefore, what they've filed then goes before the public. Isn't that true? Now, let's go on further. If, in fact, this is a burden, is this more of a burden than the plaintiffs had in Doe v. Reed? More of a burden? Yeah. Because in Doe v. Reed, it suggests that the modest burden, which was accompanying those who had to sign the petition, was not enough from getting out of public notice of those who were the signers. No, it wasn't. They found expressly that there was a First Amendment right, there was expressive activity. Well, I read what they said. Faced with the state's unrebutted arguments that only modest burdens attend the disclosure of a typical petition, the plaintiffs' broad challenge must be rejected. That's what the Supreme Court suggested. Yeah, but they went on to apply First Amendment analysis of exacting scrutiny. They did apply First Amendment analysis, and in that particular case, there wasn't even any ñ in that particular case, there was more that would suggest that Justice Alito's opinion might be something we would look at. But there's not even any evidence of that in this particular case, is there? No, not of harassment, but there's plenty of reasons for anonymity, including what the Supreme Court in McIntyre identified, that is, prejudicing the message by the identity of the messenger, and that that is sufficient. But, you know, there's another line of talk from the United States Supreme Court. As it increasingly allows contributions and expenditures in campaigns, the Court is very careful to say, this does not mean that there cannot be compelled disclosure, because the voter has an interest in knowing who's behind all of this. So you've got a very strong competing line of talk, at least, that the voter has a real interest in knowing who's behind things. Well, in Citizens United, which I'm also familiar with, they upheld a one-time event-driven report. They were not talking about disclaimers, even though in the candidate context in Buckley, they already upheld a disclaimer. In McIntyre, the very same disclaimer that was required and upheld for candidate communications in Buckley was struck down in McIntyre, because it was a ballot measure. Measures were treated differently. A different line of cases. You said you wanted to reserve ten minutes, but I want to know whether you're going to get to your other argument, that a corporation should be allowed to be a proponent, not just a natural elector. Yes, thank you. Thank you for the question. I'd be pleased to. The Chula Vista, of course, requires that the proponent be an elector or a natural person. In the ballot measure context, this would be viewed as a ballot access issue, which where strict scrutiny is applied, recent cases angle in this circuit. Now, group association is protected by the First Amendment. Many cases are on that, including recently the Roberts case, and that the government cannot restrict political speech based upon the speaker's corporate identity, Citizens United. If you don't mind, I want to ask what sounds like a ridiculous question, but I'd be interested in your answer to it. Does a corporation have a constitutional right to be elected as a state legislator or a member of the city council? No. Why not? Because they're not a natural person. Say more. Huh? Say more. I mean, why is that the difference? Because, in a sense, we've got the same problem here. That is to say, these people, or the proponents, are engaged in at least a quasi-legislative act. And so if you're saying to me that a corporation does not have a right to be a legislator, I want to know why does a corporation have a right to engage in a quasi-legislative act? Because everything that's pertinent about what a proponent, most of what a proponent does, is First Amendment activity. Yeah, but that's just like your last business about expressive act. Of course. That just starts the inquiry. We know from Citizens United that the corporation has certain First Amendment rights. So why are you cutting off the corporation's First Amendment rights here? Well, because I think when we're talking about being elected to an office, the ---- What about just voting? Huh? What about just voting? No voting. No voting by corporations. And why should a corporation ---- I'm talking about speech activity. I'm not talking about voting or being public officials. But that's what a proponent, in essence, is, a one-time legislator. No. So you say, I want to introduce this legislation and convince others to vote for it as the citizens acting as the legislature, and then I want to carry it forward and make sure that it's enacted. I think the proper analogy, if you really are hung up on that, is a lobbyist. Because the only thing the proponent can do ---- The lobbyist has no statutory authority or jobs of any kind. There are limits on what they can do, but they aren't given specific duties as proponents of initiatives are in California. Well, but lobbyists, if you're paid, they've got to get a license from the state. Those are limitations. Those are not duties in the same way that a legislator has duties. Well, maybe they just haven't, you know, imposed them yet. But I think the analogy is that all a proponent can do is ask people to agree, and enough people have to agree, to place a matter on the ballot for voting. That's like a lobbyist going to a legislator and saying, would you place this on the calendar for voting? I think it's, you know, it's not a perfect analogy, but I think this is just word games. It's meaningless. Because as long as it's expressive activity that the person is engaged in, that they have a personal right to do, which is to advocate for this initiative, then that is the end goal. Your corporate client can advocate to their heart's content under this set of rules. There is nothing that prevents them from advocating 24-7. They only can't be the official proponent. Which takes you back to Judge Fletcher's question as to why they can't run for office. You know, there's a ton of Supreme Court cases that said having alternative ways of speaking, you know, does not meet the First Amendment burden, that you can't speak in the way you want. So, and that was most recently in Citizens United. They explained that. So I do see I'm well within my ten minutes, if I may step down. Thank you, counsel. We'll hear from the State of California. I understand you have a time agreement. You're going to take 20 minutes. And, Mr. Bridge, you're going to take 10. Is that right? Correct, Your Honor. I'm speaking for the State of California. City of Chula Vista will go second. I'll do 20. He'll do 10. And I've been informed that it's my duty to keep track of that.  You may proceed. Thank you, Your Honor. Good morning. May it please the Court. I want to address briefly something that came up during my opposing counsel's argument, and that is the status of McIntyre. McIntyre is a Supreme Court case that does stand for the proposition that under certain circumstances there is a constitutionally protected right to anonymous speech. But I want to stress that in McIntyre, we were dealing with a statewide statute that affected all what I'm going to call here express advocacy. Mrs. McIntyre was handing out leaflets, I think it was outside of a PGA meeting or some meeting, having to do with a local referendum. We would call it an initiative here. And she was expressing a view, vote for, vote against. It's a bad idea. But the statute, the point I want to make is the statute covered all anonymous speech. I want to contrast that to the situation here where this statute applies in only one situation. It applies to the name that is put on an initiative petition. And as one of the justices over here has said, it is actually part of a statement of reasons. It's a notice of intention that is filed with the city clerk first and then put on the petition. But the point I want to make right at the beginning is that in some ways Mrs. McIntyre from Ohio and Mrs. Kneebone, who I had the privilege of deposing here, they have the same rights. Mrs. Kneebone can go out anywhere she wants in Chula Vista during this campaign and engage in anonymous speech. What she can't do is ask the electorate in the city of Chula Vista to sign her petition and give her statutorily granted rights without revealing her identity. Do you agree that the petition proponent disclosure requirement infringes on the First Amendment? I wouldn't use that word. I mean, it is a disclosure requirement. There was a question, I think, in the panel opinion here. I know ultimately you're going to say that it survives any level of scrutiny, but how we characterize the elector and the petition proponent, you know, is it expressive speech? Does it implicate the First Amendment? I've taken a position in the brief. The State has taken a position in the brief, and we will stand by it now, is the whole reason for this requirement is to convey information. It is to let, at the point of contact, people who are asked to sign a petition know who the proponent is. Well, when I ask you that, this is where I would appreciate your elaboration on McIntyre, because the two bases you've advocated, both protection of the electoral process and information, were exactly the bases advocated in the law in McIntyre. And the court there said that, you know, you can't ‑‑ they want to ensure that people or readers don't prejudge a message simply because they don't like its proponent. Why isn't that, even though it was pamphleteering, analogous to the situation here? Because this is the legislative process here. I mean, I just think there is a categorical distinction between a universal ban in Ohio on anonymous speech and this very narrow ban that, by definition, can only apply to a maximum of three people. And also, I mean, Doe v. Reed has occurred since McIntyre. I mean, we are ‑‑ let me say, I'll only say this once, that if I were in a California court right now, this argument would be much easier because California has adopted the position that form analysis applies to initiative petition. No federal judge that I have explained that to you so far has explained any interest in going down that path. But I do ‑‑ I don't want to walk away from it. I just want to say that the State of California's position is that that is indeed the correct analysis. You were just asked about what you would say about how it would survive any First Amendment analysis, whatever the standard. Is it correct that your first position is that the First Amendment does not apply because this is a legislative exercise of authority? And your second position is that if it did apply, it survives First Amendment scrutiny? Does the State take both those positions? And is your preferred position that this is a quasi‑legislative action and therefore not subject to the First Amendment? As for the disclosure requirement, it is our position that the First Amendment does apply and that the correct standard is form analysis, which it passes, or in the alternative, Doe v. Reed, the test of substantial executing scrutiny, that it passes that. And, Your Honor, I would love, let me just say that I would love as an advocate to say that we don't, that this is not expressive activity and the First Amendment doesn't apply. And this has come up in several conversations. And let me, the difficulty that I have as the advocate, and I've taken a position on paper, and I won't back down from it here, is that this is expressive activity. California wants the signers to know who the proponent of an initiative is when they sign it. And to me, my interpretation of that is that there is an expressive element to that. That's where we are. Do you want them to know because they are giving power to those people to not file a petition, to not defend it, or to defend it? I agree with all that. It is part of the legislative process, and it does convey... The legislative process of a legislator, is that subject to the First Amendment? Well, I think the analogy here is, is a compelled speech for California to require, as it does, that every bill in the Senate or the Assembly have the proponents to sponsor, I'm not quite sure what the name is, what name they use in the legislature, but every bill must have the name of the Senator or Assemblyman who is the proponent of that bill at the top. So the same analysis... If a legislator said, I don't want to put my name on that bill, would he have a First Amendment interest in not doing that? I think we would be in a parallel universe. I think we might be right here having this argument, and I think the argument is that no, ultimately, you lose that case because the state has a very obvious, substantial interest in making sure that... You don't lose it because the First Amendment doesn't apply to a legislator's act in a legislative capacity? Well, Your Honor, I appreciate these arguments, and let me say, on the act expression distinction, it is the state's position that the first half of the panel opinion here on whether an organization or corporation can be the proponent, that that is an act and there is no First Amendment transcript, and the First Amendment doesn't even apply in that case. I am, again, repeating what I've said in my brief, and you will tell me whether I'm right or wrong here, but I do want to say that there is an expressive element in requiring the name of the proponent to be on the petition, and it's an important expressive element because as this petition is circulated, the proponent has numerous legislative responsibilities. So, I mean, that's where I am. If I'm not being clear, I'll try it again. But I think the First Amendment does apply here, but on any test that would apply here, that California has a substantial, very clear interest in this. It's a tight fit because when somebody is signing a petition is the time when they are most likely to want to know who the proponent is. It will have the most effect at that point. And there is a minute burden because their names are already where they have lost their pilot status to begin with, and they have, as I think came up earlier, the proponents in this case, this is a classic example of how it works, they have hurled themselves into the legislative public arena here. It is difficult to think of any two proponents who are more publicly involved in this initiative than the two proponents here. So I'm running on, but... Yes, you are. Oh, go ahead. I'm intending this to be a sort of a helpful sort of almost lexical comment. Apply is an ambiguous word here. What we're trying to decide as to whether or not the First Amendment requires something or forbids something. Apply has no legal significance on that unless when we mean by apply, it doesn't mean we have to talk about the First Amendment. Do we have to apply tests about the First Amendment? When you say it doesn't apply, it doesn't tell me much one way or the other. The issue is whether or not the First Amendment requires or prohibits something. Exactly. And our position here is that the First Amendment does not require that the proponent of an initiative has a right to remain anonymous. I mean, that's absolutely... I'm trying to say I think a First Amendment test applies here. And the result is... The First Amendment applies to a different matter. But to get back to Judge Reinhart's question, is it any different if Senator Reinhart wants to introduce a bill and Senator Tallman is trying to decide whether or not he's going to co-sponsor the bill, isn't it just as important that we know that it's Senator Reinhart who's sponsoring the bill? And how is that any different from the initiative process where the support of the registered voter is sought in signing the petition, which will get the initiative on the ballot, and it's important for the voter to know at that point in time who the proponent is behind the initiative? Well, indeed, and that is the analogy that we propose in our brief, that we've adopted in our brief. And I think that if a senator, if Senator Reinhart was objecting to having his name at the top of a bill, I think we would wind up in court, and the result would be that there is no First Amendment right for anonymity when you are legislating because the state has enormous interest in letting, as this court has said several times in. How is that different from this? We had two competing ballot measures in the last election, the governor's proposition and a private citizen's proposition, both dealing with the same subject. Now, when you sign one, you want to know which one it is because the proponent can throw it away after getting all the signatures. Indeed, the proponent has a statutory right not to submit the signatures. All right, so the proponent is asking you to trust him to how to handle the initiative. Exactly. And why don't you have a right? Forget the First Amendment. Why don't you have a right to know to whom you are giving legislative authority? You do have a right. All right, regardless of the First Amendment. What's that? Regardless of the First Amendment. Yes, regardless of the First Amendment. I mean, there is a test here. And I think the information, I think in 1988 there were five insurance initiatives on the ballot. I mean, that was a classic example where the identity of a proponent would be very different because there was not only brand X and brand Y, there were five brands on the ballot then. But I agree with you completely. And if I have said anything to think that I disagree with you on that, I apologize. I mean, the First Amendment applies to you. Yes, but there are substantial state interests here that mean that regardless of the First Amendment, that this disclosure on the initiative petition is consistent with the First Amendment. I hesitate to interject this note of what I think is political reality. There's a fair amount of artificiality in the debate on both sides. We all know that any initiative can get on the ballot if there's enough money to pay the people to stand out in the Safeway parking lot. And we all know that people sign these for the most part, maybe 99 percent of the time, without even glancing at who the proponents are. And I think it makes the argument on both sides artificial. Well, in response, I would say that what generally happens is not universally true. There are some people who look at proponents. And I think we have to assume that whatever studies show or whatever newspaper articles say, I mean, the whole reason for this disclosure is we make an assumption that when people sign a petition, they look at certain things. That's why the text has to be there. Yeah, but that's why you're saying it's an assumption. It is an assumption. Rather than a reality. But I also want to say that this is not a strict scrutiny test here. I mean, in Dovey Reed, for example, I think Justice Alito particularly was explicit in saying that requiring the disclosure of those signatures afterwards was not likely to produce any useful in terms of fraud. I mean, I say that in terms of just saying that this is not strict scrutiny. This is another test. And I believe it meets the test. And so I want to point out a couple, just very briefly, just list the statutory responsibilities that an initiative circulator has, that the proponent of an initiative has, which differentiate a proponent from Mrs. McIntyre. And that is 9202, the proponent decides when the process begins. 9205, they ensure the electorate knows about it by publishing it. 9608, the election code places an obligation on them to manage and supervise signature gathering. And particularly, they have to sign a certificate that they will not knowingly allow signatures to be used for any purpose other than qualification of the initiative. And finally, after Perry v. Brown, the California Supreme Court decision, they have a right to assert the state's interest in any litigation that comes up post-qualification. They also exercise control over the ballot arguments. Indeed. Indeed. And I will say here, one of the ironies of this case is both the proponents in this case who are asserting anonymity, they both signed the ballot arguments. Their name is in the ballot pamphlet. And I will say, to the extent that there is a right to anonymity, there is a constitutionally protected right on the petition. I wonder, I just have to question whether that would apply to the names on the ballot arguments. I think the same analysis applies, and I think it fails for the same reason. But the state of California has a substantial interest in letting people know who the authors of ballot arguments are, which is why it's statutorily required that the authors of the ballot argument be identified by name in the ballot pamphlet. Do you want to reserve some time? Yes. I am going to, with the Court's discretion, pass the baton to the City of Chula Vista. May it please the Court, Charles Byrd, on behalf of the Norris Parties. I have the elector issue. The initiative is part of the legislative power that is called incapable of annihilation in the Declaration of Independence. The founders who pledged their lives to that indestructibility of the people's legislative power in 1776 could not, in 1789, when they passed out of Congress the Bill of Rights for potential adoption by the people, have thought that the phrase the freedom of speech would compel the people to bring into the core of their legislative process inanimate entities. My friend has recited most of the duties of an initiative proponent. It's important to me, perhaps the most important phrase that Mr. Botkin took from this lectern today, was the concession that a proponent has some official responsibilities, that a proponent is not merely an advocate. I would say that an official proponent is barely an advocate at all. An official proponent is carrying out the procedural steps that are necessary to put an initiative on the ballot and allow themselves and others to advocate both sides. The plaintiffs and the panel concurrence treat official proponents as if the democratic process had somehow granted, the word in the concurrence is apportioned, a partially expressive power to the people. That is not so. In fundamental American and California political theory, the theories that underlie the Constitution and Bill of Rights, the initiative and referendum powers are reserved powers. They are part of what the people gave to themselves and did not delegate to the legislature. The Norris party's position about the elector issue is that the wisest resolution of it is to hold that the First Amendment does not provide any appropriate test for the issue here. The argument made by plaintiff is akin to claiming that a natural person who is a domiciliary of Texas or a citizen of Norway should have a right to be the official proponent of an initiative in the city of Chula Vista. Plaintiffs rely substantially on Doe for that theory. But Doe recites that it is appropriate for the state of Washington to use public disclosure in part to assure that only registered electors of the state of Washington can sign an initiative in that state. I think it's a fortiori clear that when we're dealing with the official proponent, not an advocate, but the party who performs the legislative functions, Doe itself tells us that the state of California and the city of Chula Vista in its charter, this is not something we just adopted from the state constitution or statutes, that both entities have a right to restrict those people who can be official proponents and carry out the legislative procedural acts must be electors of the city. I would add only one comment that bridges to some small extent my elector issue and the issue that the state has argued based on the election code, and that is in response to a comment partially questioned from Judge Fletcher. I am a Californian. I have endured the initiative process at the statewide level since I was first eligible to vote in 1968. I remember notorious frauds like a coalition of growers placing on the statewide ballot an initiative that they called the Farm Workers Initiative in an attempt to compete with California's new farm labor law. And I certainly understand the effect of money and media on statewide initiative campaigns. I am here representing the interests of the city of Chula Vista. I stand for the council members, the mayor, the city clerk, because under the 11th Amendment, the plaintiffs couldn't sue the city itself. And I will say that these traditional notions of the formative elements of American government remain more important at the local level than they are at the statewide level where we can all speak of those notorious campaigns. I would be pleased to respond to any questions that the court may have on the elector issue. If not, I would be pleased to submit on that issue on behalf of the Norris parties. And seeing there's about eight minutes left, the state may either submit as well or you may call. I think the state said enough. Thank you, Judge Reinhart. Any further questions? I am pleased to submit. Thank you. Thank you. Of course, what's at issue here with respect to the identify yourself issue is the disclosure of the name of a proponent in the midst of an expressive activity that's compelled speech under the First Amendment and subject to First Amendment review. It doesn't matter that the proponent, that acts of a proponent are given legal effect. In fact, in Doe v. Reed, we were farther down the stream toward the matter going on the ballot when the court held that the signing of the petition, which the proponent is only asking to be done, but the signing of the petition was itself an expressive activity subject to First Amendment review. They rejected the explicit argument that, well, this is just part of the legislative process. This is not new argument. This was rejected in Doe v. Reed in a context that is down the road than where we are in this case. So now, to go to the point. I don't see any difference between merely as a citizen and as a voter saying I would like this measure to be adopted, because we as a people have been given that right. You see no difference between that and saying I want to be the proponent of this, and I may throw away the petitions if I feel like it. I may defend them if I feel like it. I will decide officially what arguments are presented to the voters, and that's the authority I am asking from you when you sign this petition. You see no difference between that and a simple citizen signing a petition. I don't see any pertinent or relevant or material difference. This is all, quote, part of the legislative process, but we're farther down the road than when the court said in Doe that the First Amendment analysis applies. When they sign the petition, it has legal consequences, just like becoming a proponent. And the signers can't be anonymous either. I'm sorry? The signers can't be anonymous either. You can't know whether there are the correct number of voters who have signed if you have 150 pages of anonymous, anonymous, anonymous. So that's also a type of compelled disclosure. Of course. And this is, it seems to me, even a stronger interest, because in addition the proponent has all the duties that we've talked about. Well, the proponent is known. You have no anonymous proponents. We're not challenging that you've got to file it with the clerk or you have to have it in the newspaper. So there is no such thing as an anonymous proponent. Why do you not challenge that? Why don't those people, proponents, have a right not to file with the clerk? Because it's not at the point of contact with the voter. That's when the interest, for instance, having the argument that is being presented right then and there to the voter be distorted by revealing who the proponent is. Hey, how about this? Distorted or made clear. Hey, how about the Republicans take over the legislature here? Bad idea. Okay. And they are hostile. I have some disagreement about that, but let's go on and hear your hypothetical. They love the death penalty and they're hostile to school bond initiatives. So they pass a statute that says, using the same argument that you're all using, the number one, when you have to put in the petition, the names of all the school board members. Because, after all, those are the ones that are going to be able to exercise the governmental power to spend this money. How about if on the let's remove capital punishment, the legislature says list, you know, the top ten most egregious criminals that are now going to be let loose if you pass this initiative. Except that's the content of the initiative or the law, which there are a bill of attainder issues and all kinds of issues of just saying, well, this is going to apply to these people rather than being a law of general applicability. But this isn't about that. This isn't about the content of the initiative. Any initiative of whatever content is subject to these procedural rules. Yeah, but the point is, this is compelled disclosure. In my examples and in this instance, it is judged under the First Amendment. It is not ignored. It's not part of the First Amendment. Mr. Bob, this may go to the balancing, but do you concede that the people whose support is sought, the registered voters whose signatures are sought, have a right to know who the proponents are who are asking for their support? I haven't thought about that specifically, but I'm thinking. How long have you been living with this case and you haven't thought about that question? There's a few things I haven't thought about that you guys are able to think of. I've asked the question, do you have a thought now? Well, I think that's a closer case. But that's this case. No, it isn't. That information is available. Not at the moment that their support is sought. You know, I've got a cell phone right here, and it's got Google on it. And somebody's standing right here with a petition. I can find that information out right then and there. What about me? I don't have a smart phone. And not all voters do. Then all you have to do is wait a second. You don't forfeit your right to not sign the petition. We don't wait a second. You're in the Safeway parking lot. They come up, they say, do you want to sign this? Oh, pardon me, I've got to run down to the city clerk's office. That's your only opportunity to sign the petition. Well, but, you know, what you're talking about is not a realistic. I wouldn't think you'd want to arrest your case on unrealistic kind of Well, the other thing I wanted to address. If the person has a right to know what they're signing at the time, then why isn't the state's or the city's right to require it on the piece of paper pass this kind of scrutiny? You know, with all due respect, you know, you may feel that and believe that in your heart. I don't know. As has been, well, as your statement suggests. And I'm not saying this to you personally. Someone may believe that in their heart. But the Supreme Court has said no to that. They said the exact opposite to that. That it was the time of the contact with the voter when the interest was not on the side of government deciding what information is going to be given to the voter. But it is the time in which the speaker has the highest right to control his own statement. Well, the reason we're asking the question is you flipped it because you, in effect, were giving the right to the voter, which I thought the Supreme Court in McIntyre had made clear. It was the anonymous speaker that actually held the upper hand. But it was your answers to the previous questions that seemed to have flipped that because you were suggesting that there might be a harder case or there might be certain rights of the voter. But now you're coming back to what I think McIntyre said, which is the speaker, being anonymous, has a very high First Amendment right. So really, I guess you would not rely on your earlier comment that the voter might actually have some upper hand in this case. Not at the point of the contact of the voter. Not at the point of the contact. That's when the rights of the ‑‑ if I misspoke, I'm sorry.  Maybe we misunderstood you. Okay. Thank you. I thought you were going down that path, but it helps to have you clarify that. The only other thing I would say, because you all seem very interested in this, is if you're in the legislative process, does the First Amendment apply at all? Some arguments or statements I would interpret as suggesting that position. Well, of course it does. A legislator cannot be prohibited, for instance, from advocating legislation. He can be limited in time, place, and manner. So can any speaker. But you cannot pass a law that says a legislator shall not go on the street corner, a legislator shall not do in the halls of Congress, advocate for legislation. The First Amendment would apply, even though that is, quote, part of the legislative process, by a public official, you know, that not just has some powers, but has lots of powers and does it full time. Thank you. Thank you, counsel. The case just argued will be submitted for decision. Thank you all for your arguments today in this interesting and important case. We'll be in recess.
judges: Thomas, Reinhardt, Silverman, Graber, McKeown, Fletcher, Gould, Tallman, Rawlinson, Callahan, Smith